**Opinion issued July 28, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-24-00856-CR

————————————

**JAVIER ARMANDO PEREZ MEJIA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Case No. 1843664**

---

## MEMORANDUM OPINION

A jury found appellant, Javier Armando Perez Mejia, guilty of the third-degree felony offense of possession of a controlled substance, namely, methamphetamine, weighing more than one gram but less than four grams.[1]

---

[1]  *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.115(c).

Following the punishment hearing, the trial court assessed appellant's punishment at five years' confinement. In his sole issue, appellant contends that the trial court abused its discretion in failing to conduct a sua sponte informal inquiry into his competency to proceed with trial.

We affirm.

## Background

On November 10, 2023, Officers D. Guerra, A. Parnell, and R. Bellard of the Bellaire Police Department responded to a call of criminal trespass at the Bellaire Recreation Center (the "center"). When the officers arrived, appellant was sitting on the ground by the center's exit doors. Officer Guerra testified that he recognized appellant because he had been dispatched to the same location on November 2, 2023, to issue a verbal trespass warning to appellant.

Officers arrested appellant for the offense of criminal trespass and transported him to jail. Appellant told the officers that he had "ice" in the upper left pocket of his jacket. Officer Guerra testified that "ice" means methamphetamine. When appellant was asked where he got the methamphetamine from, he stated that he had found it in a laundromat. The substance field-tested positive for methamphetamine, and appellant was charged with the offense of possession of a controlled substance. The results of a chemical analysis that was later conducted on the substance showed

it to be methamphetamine "with a net weight of 1.734, plus or minus 0.037 grams, with a 95.45 percent level of confidence."

Appellant testified that he was homeless and the center allowed him to shower and charge his cell phone. On redirect examination, when defense counsel asked appellant why he was at the center on the date of his arrest, appellant testified, "I was homeless because I live by the Ten Commandments, to have dreams with God. That made my dad mad because I'm rebuilding the temple in Israel until the rapture."

At the bench, the prosecutor argued that appellant's testimony about "living by the Ten Commandments" opened the door to the admission of evidence about his prior conviction of assault-family member. After further discussion, the following exchange took place:

> [The Court]: [Appellant has] put his character in issue. He's put his character in issue by saying he follows the Ten Commandments.
>
> [Defense Counsel]: Yeah. And I told him not to do that.
>
> [The Court]: He can always ask him what he means by that, but I don't know about that can of worms. You may not -- don't ever ask an open-ended question on cross-examination.
>
> [Defense Counsel]: I told him not to mention that at all.
>
> . . . .
>
> [The Court]: Well, he's put his character in issue. So that's the only character that's relevant. So if he's saying that he's a law-abiding citizen -- I don't know what he means by that, about the Ten Commandments.

3

[Defense counsel]: I don't either.

[The Court]: It's kind of tangentially the issue, but it is out there for the jury to consider, unless you want -- and it's kind of late. Nobody stood up and objected to it.

[Defense Counsel]: Well, he caught me off guard because I told him not to, but of course, he doesn't pay me any attention.

When the prosecutor asked appellant to clarify what he meant when he testified that "he lived by the Ten Commandments," appellant replied, "That means I keep the Sabbath. So Saturday, I wouldn't do any drugs. I don't do drugs, coffee. Saturdays. I don't work, sell Saturdays."

After both sides rested, the jury found appellant guilty of the charged offense of possession of a controlled substance, namely, methamphetamine, weighing more than one gram but less than four grams.

At the punishment hearing, the State called appellant's father, Rene Armando Perez-Aguilar, to testify. Perez-Aguilar testified that, on May 14, 2024, he picked appellant up from the hospital. According to Perez-Aguilar, he had taken appellant to the hospital because appellant told him that he "didn't feel well and that he wanted some attention." After they returned home and went to bed, appellant turned the volume all the way up on his cell phone. Perez-Aguilar testified that when he scolded appellant and told him to turn down the volume, appellant hit his father with the phone, breaking his nose. According to Perez-Aguilar, appellant "looked like he

4

was crazy" and "was kind of out of his mind." Perez-Aguilar testified that appellant drew a cross on his forehead with his father's blood.

Perez-Aguilar testified that he thought the medication appellant had taken at the hospital put him in that state because he "[did not] usually behave that way." According to Perez-Aguilar, appellant told him that one of the medications he received at the hospital made him "very upset" and another "made him feel very down." He further testified that appellant wrote in a Facebook post that he had hit his father because he had killed his cat. Perez-Aguilar denied killing appellant's cat.

At the conclusion of the punishment hearing, the trial court assessed appellant's punishment at five years' confinement.

## Discussion

In his sole issue, appellant asserts that the trial court erred in failing to conduct a sua sponte informal inquiry into his competency to proceed with trial. According to appellant, he was denied due process and is entitled to an abatement for proceedings consistent with Chapter 46B of the Texas Code of Criminal Procedure. The State responds that the trial court did not abuse its discretion by not conducting an informal competency evaluation because there was no suggestion that appellant was incompetent to stand trial.

## A. Standard of Review and Governing Law

"As a matter of constitutional due process, a criminal defendant who is incompetent may not stand trial." *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018); *see Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) ("We have repeatedly and consistently recognized that 'the criminal trial of an incompetent defendant violates due process.'" (quoting *Medina v. California*, 505 U.S. 437, 453 (1992))). To ensure that "legally incompetent criminal defendants" do not stand trial, the Texas Legislature has enacted "a substantive and procedural framework for making competency determinations." *Boyett*, 545 S.W.3d at 563.

Chapter 46B of the Texas Code of Criminal Procedure sets forth the framework for making competency determinations. *See* TEX. CODE CRIM. PROC. ch. 46B. This statutory scheme codifies the constitutional standard for competency to stand trial and describes the circumstances that require—and procedures for making—a determination of whether a defendant is competent to stand trial. *Turner v. State*, 422 S.W.3d 676, 689 (2014); *see* TEX. CODE CRIM. PROC. arts. 46B.001–.055. Article 46B.003(a) provides that "[a] person is incompetent to stand trial if the person does not have: (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." TEX. CODE CRIM. PROC. art. 46B.003(a).

Procedurally, a trial court employs two steps for making competency determinations: the first is an informal inquiry; the second, if applicable, is a formal competency trial. *Boyett*, 545 S.W.3d at 563; *see* TEX. CODE CRIM. PROC. arts. 46B.004(c), 46B.005(b). An informal inquiry is triggered upon a suggestion from any credible source that the defendant may be incompetent. *Boyett*, 545 S.W.3d at 563; *see* TEX. CODE CRIM. PROC. art. 46B.004(a)–(c-1). At the informal inquiry, the trial court must determine "whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." TEX. CODE CRIM. PROC. art. 46B.004(c); *see Boyett*, 545 S.W.3d at 563. Code of Criminal Procedure article 46B.004(c-1) provides:

> A further evidentiary showing is not required to initiate the [informal] inquiry, and the court is not required to have a bona fide doubt about the competency of the defendant. Evidence suggesting the need for an informal inquiry may be based on observations made in relation to one or more of the factors described by Article 46B.024 or on any other indication that the defendant is incompetent within the meaning of Article 46B.003.

TEX. CODE CRIM. PROC. art. 46B.004(c-1). The article 46B.024 factors include the capacity of the defendant during criminal proceedings to (1) rationally understand the charges against him and the potential consequences of those pending charges; (2) disclose to his defense counsel pertinent facts, events, and states of mind; (3) engage in a reasoned choice of legal strategies and options; (4) understand the adversarial nature of the criminal proceedings; (5) exhibit appropriate courtroom

7

behavior; and (6) testify. *Id.* art. 46B.024(1)(A)–(F); *see Laflash v. State*, 614 S.W.3d 427, 432 (Tex. App.—Houston [1st Dist.] 2020, order). The considerations for competency evaluations set out in article 46B.024 "contemplate a defendant who is at least minimally able to interact with his trial counsel in a 'reasonable and rational' way (even if they do not necessarily agree) in formulating decisions how most effectively to pursue his defense." *Turner*, 422 S.W.3d at 689–90.

In making a competency determination, "a trial court must consider only that evidence tending to show incompetency, 'putting aside all competing indications of competency, to find whether there is some evidence, a quantity more than none or a scintilla, that rationally may lead to a conclusion of incompetency.'" *Id.* at 692 (quoting *Ex parte LaHood*, 401 S.W.3d 45, 52–53 (Tex. Crim. App. 2013)). The "some evidence" standard "is not a particularly onerous one." *Boyett*, 545 S.W.3d at 564 (internal quotations omitted).

If, during the informal inquiry stage, the trial court finds more than a scintilla of evidence supporting a rational finding of fact that the defendant is incompetent to stand trial, then the trial court is required to do three things: (1) "stay all other proceedings in the case," TEX. CODE CRIM. PROC. art. 46B.004(d); (2) appoint an expert to conduct a competency examination (if it has not already done so), *id.* art.46B.021(b); and (3) move forward with a formal competency trial. *Id.* art.

8

46B.005(a)–(b). The relevant time frame for determining competency is at the time of the proceedings. *Laflash*, 614 S.W.3d at 432.

We review a trial court's decision whether to conduct sua sponte an informal inquiry into a defendant's competency for an abuse of discretion. *See id*; *see also Pleasant v. State*, No. 01-23-00144-CR, 2024 WL 3350254, at *5 (Tex. App.—Houston [1st Dist.] July 9, 2024, pet. ref'd) (mem. op., not designated for publication). Under this standard, we will not substitute our judgment for that of the trial court. *Laflash*, 614 S.W.3d at 432–33. Instead, we determine whether the trial court's decision was arbitrary or unreasonable. *Id.*

**B.    Whether the Trial Court Should Have Conducted an Informal Competency Inquiry**

Appellant asserts that the record in this case "presents evidence of incompetence from multiple sources and numerous missed opportunities for inquiries." According to appellant, evidence of his incompetence can be found in the clerk's record, the State's motion in limine, the facts of the incident, defense counsel's frustration, and the testimony at the punishment hearing.

Appellant asserts that the question of his competency was documented in the Collection of Information Form for Mental Illness and Intellectual Disability. The form notes appellant's diagnoses of schizoaffective disorder, depressive type, and mood disorder, as well as prior diagnoses of unspecified psychotic disorder, substance-induced psychotic disorder, and substance-induced psychosis vs.

9

schizophrenia. The form also reflects that appellant self-reported multiple hospitalizations and received inpatient and outpatient treatment for psychosis, depression, anxiety, and suicidal ideations/attempt. Appellant further asserts that the matter of his competency was also raised directly by the State in an oral motion in limine regarding "any mention of mental health or mental health issues" immediately preceding voir dire. According to appellant, the State's motion in limine, coupled with the information contained in the form, shows that the trial court should have conducted an informal inquiry.

"The fact that a defendant is mentally ill does not by itself mean he is incompetent." *Turner*, 422 S.W.3d at 691. A defendant's mental illness, past or present—absent credible evidence that because of it, he lacks "(1) sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against [him]," TEX. CODE CRIM. PROC. ANN. art. 46B.003(a)—does not by itself equate to a suggestion of incompetency. *See Boyett*, 545 S.W.3d at 564 ("[T]here must be some evidence indicating that the defendant's refusal to rationally engage with counsel is caused by his mental illness."); *Clark v. State*, 592 S.W.3d 919, 928 (Tex. App.—Texarkana 2019, pet. ref'd) (concluding trial court did not abuse its discretion by finding defendant competent even though defendant had mental illness and failed to cooperate with counsel); *see also Pleasant*, 2024 WL 3350254, at *9

10

(holding no abuse of discretion where trial court did not conduct informal competency inquiry based on evidence of defendant's mental health concerns and ongoing psychoactive medication at the time of trial); *Dusenbery v. State*, No. 02-16-00125-CR, 2018 WL 4025078, at *9 (Tex. App.—Fort Worth Aug. 23, 2018, pet. ref'd) (mem. op., not designated for publication) (concluding defendant's alleged pedophilia, depression, and suicidal ideations did not suggest that he was incompetent to stand trial). Here, although the record contains evidence that appellant had a history of mental health issues, he does not explain how his mental illness impeded his present ability to communicate with his attorney or affected his understanding of the proceedings against him. *See* TEX. CODE CRIM. PROC. art. 46B.003(a); *Baldwin v. State*, 227 S.W.3d 251, 253 (Tex. App.—San Antonio 2007, no pet.) (concluding that to present some evidence of incompetence, defendant needed to show that his past depression or childhood abuse somehow interfered with his present ability to communicate with his attorney or with his understanding of proceedings against him).

Appellant also asserts that the facts of the incident for which he was charged, although not available to the trial court until the witnesses testified, were "another cue." He states, in conclusory fashion, that "[i]t is highly unusual behavior for an adult person to lie or sit in front of a community center doorway long enough for a concerned staffer to call police." Appellant further suggests that his testimony—i.e.,

11

"I was homeless because I live by the Ten Commandments, to have dreams with God. That made my dad mad because I'm rebuilding the temple in Israel until the rapture"—is evidence of intrusive thoughts and emotions.

The Texas Court of Criminal Appeals has recognized that a defendant's statements "which suggest some irrationality" do not necessarily show that the defendant is unable to rationally consult with counsel or understand the proceedings against him. *Ross v. State*, 133 S.W.3d 618, 627 (Tex. Crim. App. 2004) (concluding defendant's statements to his mother and to co-counsel "which suggested some irrationality," and fact that appellant did not want to have witnesses called on his behalf at punishment phase, did not necessarily show appellant's inability to rationally consult with his lawyer or to understand proceedings against him); *see also Pleasant*, 2024 WL 3350254, at *9 (concluding trial court did not abuse discretion by not conducting informal competency inquiry where defendant offered "rambling, tangential, and delusional" answers during testimony which were intermixed with other responses that were appropriate to questions asked); *Lindsey v. State*, 544 S.W.3d 14, 23 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (concluding although some of defendant's statements may have been irrelevant to proceedings, none of his statements indicated he did not understand or appreciate what was going on or was unable to communicate and function rationally); *Johnson v. State*, 429 S.W.3d 13, 18 (Tex. App.—Houston [14th Dist.] 2013, no pet.)

("Bizarre, obscene, or disruptive comments by a defendant during court proceedings do not necessarily constitute evidence supporting a finding of incompetency."); *Lewis v. State*, 532 S.W.3d 423, 427–29 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (concluding trial court did not err in failing to conduct informal competency inquiry for defendant who was found competent to stand trial, but who had been diagnosed with mental illnesses, asked to be called "Paramount Security Interest Holder," and disrupted trial with screaming). Moreover, a review of the record shows that appellant's testimony was not incoherent, disjointed, or delusional. He testified that he was at the center because he was homeless, and he took showers and charged his cell phone there. The facts of the incident and appellant's statements at trial do not show his inability to rationally consult with his lawyers or to understand the proceedings against him.

Appellant argues that defense counsel's obvious frustration over appellant's testimony that he "live[d] by the Ten Commandments . . . and [was] rebuilding the temple in Israel until the rapture" is evidence of incompetency that should have triggered an informal inquiry. We disagree.

During an exchange concerning whether appellant's testimony about "living by the Ten Commandments" had opened the door to the admission of evidence about his prior conviction of assault-family member, defense counsel informed the trial court that he had told appellant "not to mention that at all." When the trial court

13

pointed out that nobody had objected to appellant's testimony, counsel stated, "Well, he caught me off guard because I told him not to, but of course, he doesn't pay me any attention." To the extent that appellant disagreed with his counsel on "how most effectively to pursue his defense" by testifying as he did despite his attorney's admonishment, this is not evidence of incompetency. *See Turner,* 422 S.W.3d at 689–90; *Laflash*, 614 S.W.3d at 432.

Appellant also points to his father's testimony during the punishment hearing as evidence of his incompetence to stand trial. Perez-Aguilar testified about the circumstances surrounding appellant's prior assault of him in May 2024, and the booking photo admitted into evidence depicting a red cross on appellant's forehead that he had drawn with his father's blood. Perez-Aguilar also testified about appellant's Facebook post in which he alleged that his father had killed his cat. Although this may be evidence of appellant's mental state at that time, the relevant time frame for determining competency is at the time of the proceedings. *Laflash,* 614 S.W.3d at 432. Therefore, Perez-Aguilar's testimony about these events is not evidence of appellant's incompetence at the time of trial. *See id.*; *see also Ex Parte Brimmer*, No. 02-25-00369-CR, 2026 WL 478946, at *7 (Tex. App.—Fort Worth Feb. 19, 2026, no pet.) (mem. op., not designated for publication) (stating that defendant's reliance on evidence of his mental state to show incompetency to stand trial—including previous diagnosis of depression and "deluded thinking and

14

paranoia" surrounding his prior arrest—ignored relevant time frame); *Casares v. State*, No. 13-23-00561-CR, 2025 WL 1464524, at \*13 (Tex. App.—Corpus Christi–Edinburg May 22, 2025, no pet.) (mem. op., not designated for publication) (concluding defendant failed to connect matters that occurred several months prior to his trial to evidence of his incompetence that was observed by trial court at time of trial).

We conclude that although the record contains evidence that appellant had mental health issues for which he received treatment and medications, the record contains no evidence that his mental health issues prevented him from having (1) a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, or (2) a rational as well as factual understanding of the proceedings against him. *See* TEX. CODE CRIM. PROC. art. 46B.003(a); *Turner*, 422 S.W.3d at 691. We therefore hold that the trial court, which was in the position to view appellant's demeanor during trial, did not abuse its discretion by failing to sua sponte conduct an informal inquiry into appellant's competency to stand trial. *See McDaniel v. State*, 98 S.W.3d 704, 713 (Tex. Crim. App. 2003) (holding trial court did not err by failing to perform competency inquiry and noting it "cannot ignore the trial court's first-hand factual assessment of [the defendant's] mental competency" and that trial court's factual findings "are entitled to great deference").

We overrule appellant's sole issue.

## Conclusion

We affirm the trial court's judgment.


Kristin M. Guiney
Justice

Panel consists of Chief Justice Adams and Justices Guerra and Guiney.

Do not publish. TEX. R. APP. P. 47.2(b).